NEW YORK STATE PSYCHIATRIC ASSOCIATION, INC., in a representational capacity on behalf of its members and their patients, Michael A. Kamins, on his own behalf and on behalf of his beneficiary son, and on behalf of all other similarly situated health insurance subscribers, Jonathan Denbo, on his own behalf and on behalf of all other similarly situated health insurance subscribers, Shelly Menolascino, M.D., on her own behalf and in a representational capacity on behalf of her beneficiary patients and on behalf of all other similarly situated providers and their patients, Plaintiffs–Appellants,

v.

UNITEDHEALTH GROUP, UHC Insurance Company, United Healthcare Insurance Company of New York, United Behavioral Health, Defendants–Appellees.*

No. 14–20–cv.

United States Court of Appeals, Second Circuit.

Argued: Dec. 15, 2014.

Final Submission: Feb. 20, 2015.

Decided: Aug. 20, 2015.

* The Clerk of the Court is directed to amend the caption of this case as set forth above.

D. Brian Hufford, Zuckerman Spaeder LLP, New York, N.Y. (Jason S. Cowart, Zuckerman Spaeder LLP, New York, N.Y.; Conor B. O'Croinin, Zuckerman Spaeder LLP, Baltimore, MD; Meiram Bendat, Psych–Appeal, Inc., West Hollywood, CA; Anthony F. Maul, The Maul Firm, Brooklyn, N.Y., on the brief), for Plaintiffs–Appellants.

Catherine E. Stetson, Hogan Lovells U.S. LLP, Washington, DC (Mary Helen Wimberly, Hogan Lovells U.S. LLP, Washington, DC; Richard H. Silberberg, Dorsey & Whitney LLP, New York, N.Y.; Steven P. Lucke, Andrew Holly, Dorsey & Whitney LLP, Minneapolis, MN, on the brief), for Defendants–Appellees.

Before: JACOBS, LIVINGSTON, and LOHIER, Circuit Judges.

LOHIER, Circuit Judge:

■ Plaintiffs New York State Psychiatric Association, Inc. ("NYSPA"), Jonathan Denbo, and Dr. Shelly Menolascino sued UnitedHealth Group, UHC Insurance Company, United Healthcare Insurance Company of New York, and United Behavioral Health (collectively, "United").[1] Relying on §§ 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), the plaintiffs claimed that United had violated its fiduciary duties under ERISA, the terms of ERISA-governed health insurance plans administered by United, and the Mental Health Parity and Addiction Equity Act of 2008 (the Parity Act),[2] which requires group health plans and health insurance issuers to ensure that the financial requirements (deductibles, copays, etc.) and treatment limitations applied to mental health benefits be no more restrictive than the predominant financial requirements and treatment limitations applied to substantially all medical and surgical benefits covered by the plan or insurance, see 29 U.S.C. § 1185a(a)(3)(A). NYSPA also brought three additional counts under New York State law.[3]

---

1. A fourth plaintiff, Michael A. Kamins, brought claims against United pursuant to New York and California State law. Kamins has abandoned his challenge to the District Court's refusal to exercise supplemental jurisdiction over his claims.

2. Although Count I of the amended complaint cites only to the Parity Act, we agree with the District Court that the plaintiffs brought Count I pursuant to § 502(a)(3).

3. The plaintiffs have abandoned their appeal of the dismissal of Counts IV and V of the amended complaint. Although the plaintiffs' reply brief addresses Count IV in a footnote, "[w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." Dow Jones & Co. v. Int'l Sec. Exch., Inc., 451 F.3d 295, 301 n. 7 (2d Cir.2006).

United moved to dismiss the amended complaint, arguing that NYSPA did not have associational standing to sue on behalf of its members, that United could not be sued under § 502(a)(3) for alleged violations of the Parity Act or under § 502(a)(1)(B), and that in any event it would not be "appropriate" for the plaintiffs to obtain relief under § 502(a)(3) if § 502(a)(1)(B) offered an adequate remedy. The United States District Court for the Southern District of New York (McMahon, *J.*) granted United's motion to dismiss. Because we conclude that NYSPA has standing at this stage of the litigation and that Denbo's claims, but not Dr. Menolascino's claims, should be permitted to proceed, we affirm in part and vacate in part and remand.

## BACKGROUND

### 1. *The Plaintiffs*

In describing each plaintiff, we draw the following facts from the allegations in the plaintiffs' amended complaint and documents incorporated by reference therein. *See Eades v. Kennedy, PC Law Offices,* No. 14–104–cv, 799 F.3d 161, 166–67, 2015 WL 3498784, at *1 (2d Cir. June 4, 2015).

### a. *NYSPA*

NYSPA is a professional organization of psychiatrists practicing in New York State. It alleges that United unlawfully imposed financial requirements and treatment limitations on mental health benefits for patients of NYSPA members. That said, NYSPA's only specific allegations relate to an insurance plan that is not subject to ERISA, and its other allegations are generalized recitations of its members' complaints about United.

### b. *Denbo*

Denbo, an employee of the CBS Sports Network, has health insurance benefits through the CBS Medical Plan (the "CBS Plan"), which incorporates the requirements of ERISA and the Parity Act. As the claims administrator for the CBS Plan, United administers claims for behavioral health benefits, such as mental health benefits, and for medical health benefits. Under the terms of the CBS Plan, United has "exclusive authority and sole and absolute discretion to interpret and to apply the rules of the Plan to determine claims for Plan benefits." Joint App'x 181. As required by ERISA, the CBS Plan has an appeals process for adverse benefits determinations, pursuant to which United decides any appeals of its benefits determinations. United's appeal "decision[s] [are] final and binding, and no further appeal is available." [4] Joint App'x 65. The CBS Plan also describes what plan participants must do to file suit against United and how to serve United with legal process.

Denbo, who suffers from dysthymic disorder and generalized anxiety disorder, submitted benefits claims to United for his weekly and, later, semiweekly outpatient psychotherapy sessions with an out-of-network psychologist. Although United initially granted Denbo's claims, it conducted a concurrent medical necessity review while Denbo was still undergoing treatment but after he submitted claims for twelve sessions within six weeks. As a result of that review, in May 2012 United told Denbo that his treatment plan was not medically necessary and that United would no longer provide benefits for his psychotherapy sessions. United upheld its decision on appeal.

---

4. After a participant exhausts the appeals process, an optional "external review program" is available for certain types of claim denials.

In the amended complaint, Denbo alleges that United improperly administered the CBS Plan by treating claims submitted for routine, outpatient, out-of-network medical/surgical care ("medical claims") more favorably than claims for ongoing, routine, outpatient, out-of-network psychotherapy sessions ("mental health claims"), in violation of the Parity Act. For example, United subjected the mental health claims, but not the medical claims, of CBS Plan participants to preauthorization requirements or concurrent review. In determining the medical necessity of Denbo's psychotherapy sessions, moreover, United applied review standards that were more restrictive than both generally accepted mental health standards and the standards United applied to medical claims under the CBS Plan. Denbo also claimed that United contravened the terms of the CBS Plan itself. Among other things, Denbo alleges, the CBS Plan expressly permits retrospective review of submitted mental health claims for sessions lasting less than fifty minutes, but does not appear to sanction either preauthorization or concurrent review of such claims. And Denbo claimed that some of United's conduct in administering the CBS Plan violated both the Parity Act and the terms of the plan—for example, conducting a concurrent review of mental health claims based solely on the frequency of mental health office visits is, Denbo claimed, neither endorsed by the CBS Plan nor done with medical claims.

#### c. Dr. Menolascino

Dr. Menolascino, a psychiatrist, provides psychopharmacology "evaluation and management" services to United plan beneficiaries, who in turn assign their plan benefits to her. United denied or reduced benefits to Dr. Menolascino for these services. But the amended complaint does not specify how United treated "evaluation and management" services for medical/surgical care. Nor does it identify the health insurance plans of Dr. Menolascino's patients (or even the terms of those plans).

#### 2. Procedural History

On December 4, 2013, the District Court granted United's motion to dismiss the amended complaint in its entirety, holding principally that NYSPA lacked associational standing to sue on behalf of its members; as a claims administrator, United could not be sued under § 502(a)(3) for alleged violations of the Parity Act or under § 502(a)(1)(B); and relief under § 502(a)(3) would not be "appropriate" because the plaintiffs' alleged injuries could be fully remedied under § 502(a)(1)(B). This appeal followed.

### DISCUSSION

#### 1. NYSPA's Standing

 We first consider whether NYSPA has properly pleaded associational standing. An association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). By contrast, an association "lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 229–30 (2d Cir.2011), *aff'd*, — U.S. —, 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013). This is not

to say that the participation of a limited number of individual members will negate standing: the association will maintain standing if "the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); *see also N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1349 (2d Cir.1989).

NYSPA alleges, and there is no serious dispute on appeal, that its members have standing to sue United in their own right as assignees of ERISA benefits. There is also no serious dispute that this action implicates interests germane to NYSPA's purpose. The parties dispute only whether at the motion to dismiss stage NYSPA has plausibly alleged that its claims do not require individualized proof. It has. NYSPA challenges United's systemic policies and practices insofar as they violate ERISA and the Parity Act, and it seeks only injunctive and declaratory relief. *See All. for Open Soc'y Int'l*, 651 F.3d at 229. At this stage in the litigation, it remains plausible that the participation of a limited number of NYSPA members will allow NYSPA to prove that United's practices violate the relevant statutes. If at summary judgment or at trial NYSPA's claims require significant individual participation or proof, the District Court may dismiss NYSPA for lack of standing at that point. *See Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1306 n. 3 (11th Cir. 2010); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286–87 (3d Cir.2002).

Having dismissed NYSPA on standing grounds, the District Court did not consider whether NYSPA alleged facts sufficient to state a plausible claim for relief. *See*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). We vacate the District Court's dismissal of NYSPA's claims and remand for it to consider in the first instance whether NYSPA's pleadings can survive the pleading standard set forth in *Twombly. See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir.2013). Of course, nothing in this opinion precludes NYSPA, on remand, from moving for leave to amend the complaint. But we leave resolution of any such motion to the discretion of the District Court.

### 2. Denbo's Claims Under §§ 502(a)(1)(B) and 502(a)(3)

As we have previously described, Denbo claims that United breached the terms of the CBS Plan and violated its fiduciary duty to Denbo by, first, applying preauthorization and concurrent review policies to mental health claims but not to medical claims, and, second, determining the medical necessity of mental health care using guidelines that were more restrictive than those used by either the mental health community or United when it determined the medical necessity of medical claims. *See Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 120 (2d Cir.2009) ("There is no doubt that ERISA imposes on plan fiduciaries a duty to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].' 29 U.S.C. § 1104(a)(1)(D). The statute ... impose[s] a general fiduciary duty to comply with ERISA." (first alteration in original)). There is no serious dispute that Denbo's claims are both adequately and plausibly alleged in the amended complaint. The only question as to these claims is whether United may be held liable under §§ 502(a)(1)(B) or 502(a)(3) in its capacity as an ERISA claims administrator.

a. *Section 502(a)(1)(B)*

We ultimately reject United's argument that it cannot be sued under § 502(a)(1)(B) in its capacity as a claims administrator. By its plain terms, § 502(a)(1)(B) does not preclude suits against claims administrators. It simply states that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Indeed, when a claims administrator exercises total control over claims for benefits under the terms of the plan, that administrator is a logical defendant in the type of suit contemplated by § 502(a)(1)(B)—a suit "to recover benefits," "to enforce ... rights," "or to clarify ... rights to future benefits under the terms of the plan." *Id.; see Cyr v. Reliance Standard Life Ins. Co.,* 642 F.3d 1202, 1205–07 (9th Cir.2011) (en banc). Even if the statutory text were ambiguous, United fails to point us to any legislative history or agency interpretation that refutes our understanding of the statute as it applies to claims administrators who exercise total control over the benefits claims process.

■ Here, United appears to have exercised *total* control over the CBS Plan's benefits denial process. It enjoyed "sole and absolute discretion" to deny benefits and make "final and binding" decisions as to appeals of those denials. Joint App'x 65, 181. And assuming that United's actions violated Denbo's rights under ERISA, United is the only entity capable of providing direct relief to Denbo. We therefore hold that where the claims administrator has "sole and absolute discre-

tion" to deny benefits and makes "final and binding" decisions as to appeals of those denials, the claims administrator exercises total control over claims for benefits and is an appropriate defendant in a § 502(a)(1)(B) action for benefits.[5] United is such an administrator and is accordingly an appropriate defendant for Denbo's claim under § 502(a)(1)(B).

■ Our holding is in accord with six of our sister circuits, which have held that claims administrators may be sued as defendants under § 502(a)(1)(B). *See Larson v. United Healthcare Ins. Co.,* 723 F.3d 905, 913–16 (7th Cir.2013); *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.,* 703 F.3d 835, 843–46 (5th Cir.2013); *Cyr,* 642 F.3d at 1205–07; *Brown v. J.B. Hunt Transp. Servs., Inc.,* 586 F.3d 1079, 1081, 1088 (8th Cir.2009); *Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416, 438 (6th Cir.2006); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1333–34 (11th Cir.2006). Our holding also follows from the Supreme Court's holding in *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.,* 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), that non-plan defendants may be sued under § 502(a)(3). That holding was premised in part on the observation that "§ 502(a)(3) makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the 'act or practice which violates [ERISA].'" *Harris Tr. & Sav. Bank,* 530 U.S. at 246, 120 S.Ct. 2180.

*Leonelli v. Pennwalt Corp.,* 887 F.2d 1195 (2d Cir.1989), which United cites in support of its position, is not to the contrary. True, in *Leonelli* we stated that "only the plan and the administrators and trustees of the plan in their capacity as

---

5. We need not and do not decide whether a claims administrator that exercises less than total control over the benefits denial process

is an appropriate defendant under § 502(a)(1)(B).

such may be held liable" under § 502(a)(1)(B). *Leonelli,* 887 F.2d at 1199. But we never specifically addressed or considered whether a claims administrator that exercises total control over the plan claims process may be sued pursuant to § 502(a)(1)(B). *Id.* And since *Leonelli,* we have not held or even suggested that a claims administrator is an improper defendant under § 502(a)(1)(B). Because United, as claims administrator, exercised total control over the CBS Plan's claims process, we hold that it is a proper defendant under § 502(a)(1)(B).

### b. *Section 502(a)(3)*

 We turn, then, to § 502(a)(3). United first argues that it cannot be held liable under § 502(a)(3) for violations of the Parity Act because it is the claims administrator of a *self-funded* plan. The Parity Act provides as follows:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health ... benefits, such plan or coverage shall ensure that ... the financial requirements [and treatment limitations] applicable to such mental health ... benefits are no more restrictive than the predominant financial requirements [and treatment limitations] applied to substantially all medical and surgical benefits covered by the plan (or coverage), and there are no separate cost sharing requirements [or treatment limitations] that are applicable only with respect to mental health ... benefits.

29 U.S.C. § 1185a(a)(3)(A). Based on this language, United argues that the Parity Act does not apply directly to it, because it is not a "group health plan" and did not offer health insurance coverage to Denbo. Denbo responds that United's Parity Act

obligation is imposed on it not by the Parity Act itself, but rather by § 502(a)(3). Denbo's argument is based on *Harris Trust,* in which the Supreme Court interpreted § 502(a)(3) as "itself impos[ing] certain duties" that are not otherwise imposed by statute, such that "liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Harris Tr. & Sav. Bank,* 530 U.S. at 245, 120 S.Ct. 2180. In contrast to "[o]ther provisions of ERISA" that "do expressly address who may be a defendant," the Court explained that "§ 502(a)(3) makes no mention at all of which parties may be proper defendants," but rather allows a plaintiff to bring suit based on the "the *act or practice* which violates any provision of ERISA Title I." *Id.* at 246, 120 S.Ct. 2180 (quotation marks omitted). The Court's interpretation of ERISA "refutes the notion that § 502(a)(3) ... liability hinges on whether the particular defendant labors under a duty expressly imposed by the substantive provisions" of that statute. *Id.* at 249, 120 S.Ct. 2180. In light of that interpretation, § 502(a)(3) may impose a fiduciary duty arising indirectly from the Parity Act even if the Parity Act does not directly impose such a duty. For that reason, and because "§ 502(a)(3) admits of no limit ... on the universe of possible defendants," *id.* at 246, 120 S.Ct. 2180, we hold that United is a proper defendant for Denbo's Parity Act claim under § 502(a)(3).

 United next urges us to affirm the dismissal of Denbo's § 502(a)(3) claims on the ground that adequate relief is available under § 502(a)(1)(B). We disagree with that ground for dismissal, but only because we think that the District Court's dismissal on this basis was premature. Section 502(a)(3) states:

A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). As the Supreme Court explained in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), this "catchall" provision "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp.*, 516 U.S. at 512, 116 S.Ct. 1065. So "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515, 116 S.Ct. 1065. But it is important to distinguish between a cause of action and a remedy under § 502(a)(3). "*Varity Corp.* did not eliminate a private *cause of action* for breach of fiduciary duty when another potential remedy is available." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir.2001) (emphasis added). Instead, we have instructed, if a plaintiff "succeed[s] on both claims ... the district court's *remedy* is limited to such equitable relief as is considered appropriate." *Id.* at 89–90 (emphasis added). Thus in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir.2006), we vacated the district court's dismissal of the plaintiffs' § 502(a)(3) breach of fiduciary duty claim on the basis that dismissal was premature, and we affirmed the dismissal of the plaintiffs' other § 502(a)(3) claim only after holding that the defendants had violated ERISA, that most plaintiffs were therefore entitled to relief under § 502(a)(1)(B), and that the remaining plaintiffs' § 502(a)(3) claim failed on the merits. *Frommert*, 433 F.3d at 268–70, 272.

Here, Denbo's § 502(a)(3) claims are for breach of fiduciary duty, he has not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy. In other words, it is too early to tell if his claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B). We therefore hold that the District Court prematurely dismissed Denbo's claims under § 502(a)(3) on the ground that § 502(a)(1)(B) provides Denbo with adequate relief. *See Varity Corp.*, 516 U.S. at 515, 116 S.Ct. 1065 (granting a remedy where no other remedy is available "is consistent with the literal language of [ERISA], [ERISA's] purposes, and pre-existing trust law"); *Devlin*, 274 F.3d at 89 ("*Varity Corp.* evidences a clear intention to avoid construing ERISA in a manner that would leave beneficiaries without any remedy at all." (quotation marks omitted)). If, on remand, Denbo prevails on his claims under both § 502(a)(1)(B) and § 502(a)(3), the District Court should then determine whether equitable relief under § 502(a)(3) is appropriate. *See Devlin*, 274 F.3d at 89–90.

We add that where, as here, a plan participant brings suit against a "plan fiduciary (whom ERISA typically treats as a trustee)" for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with "surcharge"— "monetary 'compensation' for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment"—constitutes equitable relief under § 502(a)(3). *CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S.Ct. 1866, 1879–80, 179 L.Ed.2d 843 (2011). Every sister circuit that has considered the issue is in accord.

*See Gabriel v. Alaska Elec. Pension Fund,* 773 F.3d 945, 963 (9th Cir.2014); *Silva v. Metro. Life Ins. Co.,* 762 F.3d 711, 724–25 (8th Cir.2014); *Kenseth v. Dean Health Plan, Inc.,* 722 F.3d 869, 882 (7th Cir. 2013); *Gearlds v. Entergy Servs., Inc.,* 709 F.3d 448, 452 (5th Cir.2013); *McCravy v. Metro. Life Ins. Co.,* 690 F.3d 176, 181–82 (4th Cir.2012). And so we hold that to the extent Denbo seeks redress for United's past breaches of fiduciary duty or seeks to enjoin United from committing future breaches, the relief sought would count as "equitable relief" under § 502(a)(3). *Amara,* 131 S.Ct. at 1879–80. As such, it is to be distinguished from the relief sought in *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96 (2d Cir.2005), where we affirmed a dismissal of the plaintiff's § 502(a)(3) claims because it was clear that "any harm to [the plaintiff could] be compensated by money damages" entirely and she "[could not] satisfy the conditions required for injunctive relief." *Nechis,* 421 F.3d at 103.

Based on our review of the amended complaint, Denbo appears to request monetary compensation for any losses resulting from United's violations of the Parity Act and ERISA, and declaratory and injunctive relief prohibiting United from violating the Parity Act and ERISA in the future. These forms of relief "closely resemble[ ]" the traditional equitable remedies of injunctive relief and surcharge. *Amara,* 131 S.Ct. at 1879. But the amended complaint is not altogether clear about the source of Denbo's monetary losses. If Denbo seeks true equitable relief—such as losses flowing from United's breach of fiduciary duty—the relief sought would "resemble[ ]" the remedy of surcharge, and would therefore be available to him under § 502(a)(3), ERISA's provision for equitable remedies. *See id.* at 1880. If, on the other hand, the relief Denbo seeks is merely monetary compensation resembling legal damages—such as compensation that would neither redress a loss flowing from United's breach of fiduciary duty nor prevent United's unjust enrichment—the relief sought would be unavailable as an equitable remedy under § 502(a)(3). Of course, the availability of injunctive relief and surcharge does not mean they are necessarily appropriate, and we leave the fashioning of appropriate remedies, if any, to the District Court. *See, e.g., Kenseth,* 722 F.3d at 883.

For these reasons, we vacate the District Court's dismissal of Denbo's claims and remand.

### 3. *Dr. Menolascino's Claims*

By contrast, we affirm the District Court's dismissal of Dr. Menolascino's claims because the amended complaint's allegations relating to those claims fail to satisfy the *Twombly* pleading standard. *See Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. In particular, as to Dr. Menolascino's claims, the amended complaint fails specifically to allege how United treated "evaluation and management" services for medical/surgical care, fails plausibly to allege that United's treatment of such services for mental health care violated the Parity Act, fails to identify her patients' plans or the terms of their plans, and fails to allege facts making it plausible that United reduced or denied benefits for medically necessary services "without any basis" under the terms of those plans. Joint App'x 157. Faced with such inadequate pleading, the District Court did not err in dismissing Dr. Menolascino's claims.

### CONCLUSION

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, we AFFIRM in part and VACATE in part

and REMAND for further proceedings consistent with this opinion.